## McGrath v. First Mortgage Guarantee & Trust Company, Appellant.

*Guaranty—Contract—Guaranty of mortgage—Covenants—Waiver.*

1. Where a corporation insures the principal and interest of a mortgage, and guarantees to pay the same within six months from a date named "provided such payment shall have been requested of the company in writing by the assured," before such date, and the agreement further provides that the assured shall, when requested by the company, deliver the bond and mortgage to the company for the purpose of foreclosure, and the assured does not give the notice required, and the company notwithstanding such failure, and notwithstanding a

question as to a defect of title against which there was no insurance, requests the bond and mortgage from the assured, and the latter refuses the request unless full liability is recognized, the assured cannot thereafter recover for any loss resulting from an insufficiency of the proceeds of his own sheriff's sale of the properties insured.

2. In such a case the request by the company for the bond and mortgage cannot be deemed a waiver of its right to receive the notice provided by the policy, inasmuch as such request was not made within the stipulated time, but after such time had expired. Even if the request should be construed as a recognition that the policy was alive, still the assured was in default because of his failure to surrender the bond and mortgage to the company when requested to do so.

Argued Dec. 9, 1913. Appeal No. 126, Oct. T., 1913, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1911, No. 2,626, on verdict for plaintiff in case of Thomas McGrath v. First Mortgage Guarantee & Trust Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD and PORTER, JJ. Reversed.

Assumpsit upon a contract of guaranty. Before WILLSON, P. J.

From the record it appeared that on November 6, 1907, the defendant entered into two agreements in writing by which it guaranteed the payment of the principal and interest of two bonds and mortgages "provided such payments shall have been requested of the company in writing by the assured on or before the sixth day of November, 1910."

The material portion of the guaranty was as follows:

"The company is appointed by the assured as the agent of the assured:

"1. To collect, sue for and receive the interest secured to be paid by the bond and mortgage described in Schedule A, and the fire insurance in case of loss by fire, and the title insurance in case of any defect in title, and to exercise every option or privilege contained in said bond or mortgage.

"2. Whenever the principal sum due upon the said bond and mortgage shall become due, either by the

terms thereof or by reason of the exercise of any option given therein to the mortgagee, the company shall have the right in the name of the assured, but without expense to the assured, to foreclose the said mortgage, and out of the proceeds of sale to be paid so much as may remain after paying to the assured whatever may be due to the assured for principal and interest upon the said bond and mortgage; provided, however, that in any such case the assured shall, on demand in writing by the said company, sent by mail to the assured at Hazlett and Moss, 627 Walnut Street, or at such other address as the assured may hereafter designate in writing for that purpose, deposit the said bond and mortgage, with all title and fire insurance policies and all other documents accompanying said mortgage, with the company for foreclosure, and render such reasonable assistance as the company may require in enforcing payment of the principal and interest of said mortgage and in enforcing the performance of any and all covenants contained therein; and if the assured shall fail so to do within thirty days after the date of the mailing of such notice, all further liability of the company under this policy shall cease.

"4. The company shall not be responsible for loss by reason of the depreciation in value of the mortgaged premises, occurring by reason of fire, explosion, lightning, earthquake, wind, water, war, riot or any breach of the peace, or from defect in the title to the premises described in said mortgage, or prior encumbrances now existing thereon.

"5. Conveyance, by any means of the premises described in the mortgage, or any part thereof, to the assured, and the acceptance thereof by the assured or the purchase of said premises at any judicial sale by the assured, shall be deemed payment by this company to the assured of said principal sum or such part thereof as the value at the time of said conveyance of the portion of said premises conveyed shall bear to the value of the whole.

"9. The assured is bound to assign and deliver the said bond and mortgage, with all insurance policies, and all other instruments accompanying the same to the company if requested so to do, whenever the assured is entitled to require payment thereof, upon receipt from the company of the full amount due the assured upon said bond and mortgage."

No demand was made upon the company for the payment of the face of these mortgages and accrued interest before November 12, 1910, at which time the real estate officer of the company wrote the plaintiff that there was a defect in the title to the premises and that under the terms of the policy "we do not assume any liability by reason of defective title," but as they were always anxious to adjust such matters he should bring in his bonds and mortgages to their office, and they would foreclose them for him without cost to him.

Plaintiff's attorney thereupon called upon said real estate officer and discussed the question at issue. He refused to surrender the mortgages unless the company would admit its liability. Thereupon the bonds and mortgages were foreclosed by the plaintiff. One property was sold to a disinterested party for $4,650, and with attorney's fee of $225 and necessary costs of foreclosure resulted in a loss to plaintiff of $401.20. The other property was bought in by the plaintiff for $4,600, and with the same attorney's fee and necessary costs resulted in a loss to plaintiff of $403.95, and for reimbursement for these two several sums plaintiff thereupon brought suit in the court below.

Verdict and judgment for plaintiff for $905.77. Defendant appealed.

*Error assigned* amongst others was in refusing binding instructions for defendant.

*J. Hector McNeal*, for appellant.—The officers and employees of a corporation are merely agents, with

limited powers and all persons dealing with them are
charged with knowledge of such limitations.  The rule
applies not only to employees of corporations, but to
the highest executive officers as well.  And it is imma-
terial whether the transaction be the ordinary one of
signing a note or the more unusual one of agreeing to
pay the debt of another: Milward-Cliff Cracker Co.'s
Est., 161 Pa. 157; Bangor & Portland Ry. Co. v. Amer-
ican Bangor Slate Co., 203 Pa. 6; Gause v. Common-
wealth Trust Co., 196 N. Y. 134; Everett v. London &
Lancashire Ins. Co., 142 Pa. 332; Gould v. Dwelling
House Ins. Co., 134 Pa. 570; Waynesboro Mut. Fire
Ins. Co. v. Conover, 98 Pa. 384.

*Maurice W. Sloan*, for appellee, cited: New York
Central & Hudson River R. Co. v. Deer Creek Lumber
Co., 49 Pa. Superior Ct. 453.

OPINION BY HEAD, J., July 15, 1914:

If the plaintiff may recover at all, his right must rest
on an unwarranted breach by the defendant of some
covenant contained in the policy of guarantee upon
which he sues.  That instrument is in writing under the
corporate seal of the defendant, duly executed by its
chief officers.  The primary obligation of the defendant
thereunder was a guarantee of the payment at its home
office of the principal and interest of a certain bond and
mortgage from the day of the date of the policy "until
the sixth day of November 1910."  This obligation,
however, was neither absolute nor unqualified.  Its
performance required the doing of certain things by the
plaintiff therein plainly and clearly stipulated.  The
guarantee applied in the first instance to the regular
semiannual payments of interest secured by the mort-
gage.  No complaint having been made of any breach in
this respect, we may pass by that portion of the instru-
ment.

It further obliged the defendant company to pay the

principal sum secured with any accrued interest thereon "within six months from the sixth day of November 1910, provided such payment shall have been requested of the company in writing by the assured before said sixth day of November 1910." The significance of this plain condition upon which the indemnity covenant should become active may be readily understood. The plaintiff had bought, for the consideration named in his policy, the additional security provided by the policy only during a limited period of time. It might often happen that during such period the property covered by the mortgage would become so enhanced in value that thereafter the mortgagee could perceive no necessity for any further protection of his debt than that afforded by the bond and mortgage of the debtor. As a consequence there would be no occasion for the guarantee company to assume that its conditional obligation was to become active and unconditional until the receipt of the notice stipulated for in its covenant. No such notice was given. The plaintiff does not contend, and the evidence would not warrant such contention, that his failure to give the notice required was induced or brought about by any act, omission or declaration of the defendant or its proper officer. It is clear, therefore, that unless the company is prevented from standing upon the written contract it had made, its obligation ended on November 6, 1910.

The obligation of the company rested on the further condition thus stated in the policy, viz.: "Whenever the principal sum due upon the said bond and mortgage shall become due, either by the terms thereof or by reason of the exercise of any option given therein to the mortgagee, the company shall have the right in the name of the assured, but without expense to the assured, to foreclose the said mortgage, and out of the proceeds of sale to be paid so much as may remain after paying to the assured whatever may be due for principal and interest upon the said bond and mortgage,

provided, however, that in any such case the assured shall on demand in writing by the said company . . . . deposit the said bond and mortgage, with all title and fire insurance policies and all other documents accompanying said mortgage, with the company for foreclosure, and render such reasonable assistance as the company may require in enforcing the performance of any and all covenants contained therein, and if the assured shall fail so to do within thirty days after the date of the mailing of such notice, all further liability of the company under this policy shall cease."

The plaintiff having failed to give the required notice, as already indicated, on or before November 6, 1910, the situation remained unchanged until the twelfth day of that month.  On that date one Thomas G. Hunter, who signed his name as the "real estate officer" of the defendant, wrote the plaintiff requesting him to deposit his bond and mortgage with the company, as the terms of his policy required him to do.  He was further advised in that letter that the company, preparing to meet its indemnity obligation, had been negotiating with certain persons in the letter described, but that in the course thereof it had appeared there was some defect in the title of the mortgagor to the property covered by the mortgage and for that reason the negotiations had fallen through and the mortgagor was unable to raise the money.  This letter specifically directed the attention of the assured to a further provision in the policy of guarantee which declared, "The company shall not be responsible for loss . . . . from defect in the title to the premises described in such mortgage or prior incumbrances now existing thereon." The letter then proceeded to declare that the company did not assume any liability by reason of defective title, "but our effort is always to help out in any matter in which we are in any way interested.  If you will send us the above papers we will proceed at once to have the matter straightened out."  The evidence discloses that

in response to this letter counsel for the plaintiff went to the office of the defendant company with the bond and mortgage in his possession, which he says he offered to deliver up if the officer of the defendant would declare the company had no defense to the claim of the plaintiff or that his policy of indemnity was then in full force and the company's liability thereunder admitted. We can perceive no right that existed in the plaintiff or his counsel to attach such a condition to the performance of an act which his policy, if in force, plainly obliged him to do. If there were any defect in the title of the mortgagor which would weaken the security of what was intended to be a first mortgage, the plaintiff had not purchased, when he bought his policy, any protection against such loss. It is true, neither the plaintiff nor the defendant was to be concluded by the claim advanced by the officers of some other company, to which application for insurance of the title had been made, that there was any such defect in that title as was contemplated by the provision of the policy we have quoted. In so far as the defendant company was denying its liability for loss produced by such defect, if it existed, it was plainly within the right reserved to it in its policy. The plaintiff could not therefore relieve himself of the obligation to turn over his bond and mortgage to the defendant company and thus permit it to determine whether the claim of a defective title was well founded or not by demanding, as a condition precedent to the deposit of his papers, an admission by the real estate officer of any other or different liability than that set up by the policy.

The contention of the plaintiff then is that by writing the letter of November 12 the defendant had waived its right to defend this action on the ground that there had been a failure to give the original notice provided for in the policy. It will be observed that the waiver contended for does not rest on any act or declaration of the defendant company made before the expiration of the

term of the policy.   In Everett v. London & Lancashire
Ins. Co., 142 Pa. 332, the policy required that any action
founded thereon must be brought within a stipulated time.
Suit was not brought until some months thereafter, and
the plaintiff contended that the right of the company to
·defend on that ground had been waived by reason of some-
thing done by the company after the limitation period had
expired.   Mr. Justice MITCHELL, speaking for the court,
thus stated the situation: "In regard to the time of bring-
ing suit, the failure of the evidence of waiver is even more
marked.   The policy stipulated that no suit should be
sustainable unless commenced within three months next
after the loss, and the original writ in this action was not is-
sued until eleven months after.   By the terms of the policy
it was too late, and the judge correctly so instructed the
jury.   But he also instructed them that if the defendant,
after the stipulated time had expired, had been willing to
pay, although denying its liability, they might find a
waiver.   In this there were two serious errors.   The
acts to constitute a waiver by implication must be done
during the running of the period of limitation, not after
it has expired and the rights of the parties have become
fixed.   In Beatty v. Lycoming County Mut. Insurance Co.,
66 Pa. 9, it was said by SHARSWOOD, J.: "To constitute a
waiver, there should be shown some official act or declara-
tion by the company during the currency of the time, dis-·
pensing with it, something from which the assured might
reasonably infer that the underwriters did not mean to
insist upon it. . . . After the thirty days had expired
without any statement, nothing but the express agree-
ment of the company could renew or revivify the con-
tract."   ·

We have already seen the plaintiff does not even urge
that his failure to give the notice required was brought
about by any act or declaration emanating from the
company or its officers.   By its terms then the contract
of guarantee came to an end on November 6, 1910.   But
it is argued the request of the company made six days

later for the deposit of the bond and mortgage was a recognition by it that the policy was still alive and that its obligation had not terminated by the failure to give the notice. There was testimony also to the effect that, during the meeting on November 12, the real estate officer expressly stated his company would not take advantage of plaintiff's failure to give the written notice required by the policy. Even if that be conceded, no consideration whatever moved from the plaintiff to support any further promise by the company or its officers, and it does not appear that by reason of the receipt of that letter, or because of any declaration then made, the plaintiff was led to do or forbear to do anything to his injury. But apart from that, if the plaintiff took the position on November 12, 1910, that his policy was still in force, notwithstanding his failure to give notice, then he was clearly obliged to respond to the request of the company that he deposit his bond and mortgage so that it might proceed to foreclose the latter. If its undertaking to guarantee to the plaintiff the full amount of his debt and interest was then active, it was no more than right that it should have the opportunity, as the policy provided, to determine for itself the time and the manner of the foreclosure proceedings to the end that its loss, if any, might be minimized. Under existing circumstances there was ·no warrant whatever in the policy for the action of the plaintiff in proceeding himself to foreclose the mortgage and then hold the defendant responsible for any loss arising from the failure of the fund at sheriff's sale to pay his debt in full.

We are of opinion that the course pursued by the plaintiff has left him without remedy on his policy against the defendant, and the defendant's fourth point (third assignment) praying for a directed verdict should have been affirmed. That assignment must accordingly be sustained.

Judgment reversed.